**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                                  :
SAMY GATTAS and MAHA GATTAS,      :
                                                  :
            Plaintiffs,                         :
                                                  :          Civil Action No. 07-4242 (JAG)
            v.                                    :
                                                  :                  **OPINION**
CITY OF JERSEY CITY; JERSEY CITY    :
POLICE DEPARTMENT; CHIEF            :
THOMAS J. COMEY, in his official       :
capacity; OFFICER MICHAEL              :
GONZALEZ, individually and in official  :
capacity; OFFICER J. WALSH,              :
individually and in official capacity;     :
OFFICER ALAMO, individually and in    :
official capacity; OFFICER FIGUEROA,   :
individually and in official capacity; JOHN :
AND JANE DOES 1-10; MIKE AND         :
MARY MOES 1-10,                          :
                                                  :
            Defendants.                        :
_____:


**GREENAWAY, JR., U.S.D.J.**

        This matter comes before this Court on the motion for summary judgment by defendant

Michael Gonzalez ("Gonzalez Motion") (Docket No. 18), and the motion for summary judgment

by the City of Jersey City, the Jersey City Police Department, Chief Thomas J. Comey, Officer

Alamo, Officer Figueroa, and Officer J. Walsh ("Collected Defendants Motion").  (Docket No.

17.)

        For the reasons set forth below, both motions are granted, in part, and denied, in part.

Specifically, the Gonzalez Motion is granted as to Count VI of the Complaint, denied as to Counts I-IV of the Complaint, and denied as to Counts VII-XIX of the Complaint; and the Collected Defendants' Motion is granted as to Counts I-VI of the Complaint, and denied as to Counts VII-XIX of the Complaint.

## BACKGROUND

### I.     The Parties

Plaintiffs Samy and Maha Gattas are a married couple presently residing in Cedar Grove, New Jersey.  (Compl. ¶ 6.)  At the time of the incident at the heart of Plaintiffs' Complaint, Samy and Maha Gattas resided in Jersey City, New Jersey.  (Id.)

Defendant City of Jersey City is a unit of local government authorized under Title 40A of the New Jersey Statutes to conduct business on behalf of the municipality throughout the State of New Jersey.  (Id. ¶ 7.)

Defendant Jersey City Police Department ("JCPD") is a department within the government entity of Jersey City, that is responsible for law enforcement within its geographical bounds.  (Id. ¶ 8.)  JCPD is also responsible for the training of its law enforcement appointees, and promulgating and enforcing polices, practices, and procedures to regulate the actions of the employees within the department.  (Id.)

Defendant Michael Gonzalez ("Gonzalez") is a police officer with JCPD.  (Brief in Support of Summary Judgment Motion in Favor of Police Officer Michael Gonzalez, Undisputed Statement of Material Facts ("Gonzalez 56.1") ¶ 10; see Brief in Opposition to Motion for Summary Judgment Filed by Defendant Michael Gonzalez, Response to Defendant's Undisputed Statement of Material Facts ("Pls.' 56.1") ¶ 10 (admitting to Gonzalez's service with JCPD).)

2

Defendant Thomas J. Comey ("Comey") is Chief of JCPD.  (Brief in Support of Summary Judgment Motion in Favor of City of Jersey City, Jersey City Police Department, Chief Thomas J. Comey, Police Officer Nelson Alamo, Police Officer William Figueroa and Police Officer John Walsh, Undisputed Statement of Material Facts ("Collected Defs.' 56.1") ¶ 1.)[1]

Defendant Officer Alamo is identified as Sergeant Nelson Alamo ("Alamo").  (Id. Procedural History, ¶ 1.)  Defendant Officer Figueroa is identified as Police Officer William Figueroa ("Figueroa").  (Id.)  Defendant J. Walsh is identified as Police Officer John Walsh ("Walsh").  (Id.)  The parties' Rule 56.1 statements do not further address the identity or position of Defendants Alamo, Figueroa, or Walsh.  (See generally Gonzalez 56.1; Collected Defs. 56.1; Pls.' 56.1.)  Nor do the parties' Rule 56.1 statements address the identity of John and Jane Does 1-10, or Mike and Mary Moes 1-10.  (Id.)

## II.    Samy Gattas' Arrest

Plaintiffs' Complaint stems from circumstances surrounding the arrest of Plaintiff Samy Gattas ("Gattas") on September 10, 2005.  (Compl. ¶ 12.)  Plaintiff's allegations appear below.

On September 10, 2005, Gattas called JCPD to complain about a neighbor, who had placed items for sale on the sidewalk.  (Id.)  Gonzalez responded to the call, and ordered Gattas' neighbor to remove the items.  (Id.)  Gonzalez then threatened to end the dispute between Gattas and his neighbor by arresting both of them.  (Id. ¶ 13.)

---

[1]Plaintiffs did not file a responsive statement of material facts, addressing the Collected Defendant's statement of material facts not in dispute.  "[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion."  Loc. Civ. R. 56.1.  To the extent, however, that the Collected Defendants' statement of material facts overlaps with Gonzalez's statement of material facts, Plaintiff's responsive statement of material facts addressing Gonzalez's statement is deemed responsive to the overlapping statements in the Collected Defendants' statement of material facts.

Gonzalez ordered Gattas to move his motor vehicles, which were parked in his driveway. (Id. ¶ 14.) Gattas moved his motor vehicles, and then asked Gonzalez why he did not ask the owners of other motor vehicles parked in the same manner, to move their motor vehicles. (Id. ¶ 15.)

At that point, Gonzalez demanded to see Gattas' motor vehicle documents. (Id. ¶ 16.) Gattas agreed to produce his documents, but inquired of Gonzalez why Gattas should be compelled to do so. (Id. ¶ 17.) Gonzalez became "enraged" and "threatened to take this encounter 'to the next level.'" (Id. ¶ 18.) Gonzalez handcuffed and arrested Gattas. (Id.) The verbal exchange between the two men was recorded, with Gonzalez's knowledge. (Pls.' Ex. 7; Deposition of Michael Gonzalez ("Gonzalez Dep.") 93:16-23.)

Gattas was handcuffed for between twelve to fifteen minutes. (Gonzalez 56.1 ¶ 6; Pls.' 56.1. ¶ 6.)[2] Gattas alleges that the handcuffs were too tight, and that Gonzalez ignored Gattas' pleas that Gonzalez was breaking Gattas' arm and pulling too hard on the handcuffs. (Compl. ¶¶ 20-21.) Gattas further alleges that the other officers at the scene ignored or laughed at his pleas to loosen the handcuffs. (Id. ¶ 22.) Gonzalez did not request medical attention when he was arrested, or later at the police station. (Gonzalez 56.1 ¶ 5; Pls.' 56.1 ¶ 5.)

As a result of injuries allegedly suffered in the course of the arrest, Gattas embarked on a lengthy history of medical treatment. (See Opp., Pls.' Ex. 1:2-9 (listing medical providers, dates of treatment, and a summary of findings of treatment from September 2005 through February

---

[2] Gattas alleges that he was handcuffed for an additional period of time while at the police station, and while being transported from the station to "Jersey City BCI" for processing. (Pls.' 56.1 ¶ 6.)

2008).)  Among other courses of treatment, Gattas underwent arthroscopic surgeries on both

wrists, two arthroscopic surgeries on his right shoulder, and right elbow surgery.  (Id. Ex. 1:4-9.)

## III.    The Complaint

On September 5, 2007, Plaintiffs filed an nineteen-Count Complaint against Defendants.

(Docket No. 1.)  Plaintiffs' claims include:

> **Count I:**  Violation of Constitutional Rights against Gonzalez, Walsh, Alamo, Figueroa,
> and/or John/Jane Does 1-10 (collectively, "Gonzalez and All Defendant Officers") for
> Compensatory Damages.
> **Count II:**  Violation of Constitutional Rights against Gonzalez and All Defendant
> Officers for Exemplary Damages.
> **Count III:**  Violation of Statutory Rights against Gonzalez and All Defendant Officers for
> Compensatory Damages.
> **Count IV:**  Violation of Statutory Rights against Gonzalez and All Defendant Officers for
> Exemplary Damages.
> **Count V:**  Violation of Constitutional Rights against City of Jersey City, JCPD, and
> Supervisors for Compensatory Damages.
> **Count VI:**  Conspiracy to Violate Civil Rights against Gonzalez and All Defendant
> Officers for Compensatory Damages.
> **Count VII:**  Assault and Battery against Gonzalez for Compensatory Damages.
> **Count VIII:**  Assault and Battery against Gonzalez for Exemplary Damages.
> **Count IX:**  Intentional Infliction of Emotional Distress against Gonzalez and All
> Defendant Officers for Compensatory Damages.
> **Count X:**  Intentional Infliction of Emotional Distress against Gonzalez and All
> Defendant Officers for Exemplary Damages.
> **Count XI:**  Respondeat Superior Liability against Jersey City, JCPD, and Supervisors for
> Compensatory Damages.
> **Count XII:**  Respondeat Superior Liability against Jersey City, JCPD, and Supervisors for
> Exemplary Damages.
> **Count XIII:**  Negligence against Gonzalez and All Defendant Officers for Compensatory
> Damages.
> **Count XIV:**  Negligence against Gonzalez and All Defendant Officers for Exemplary
> Damages.
> **Count XV:**  Negligence against Jersey City, JCPD, and Supervisors for Compensatory
> Damages.
> **Count XVI:**  Negligence against Jersey City, JCPD, and Supervisors for Compensatory
> Damages.

**Count XVII:**  Negligence against Jersey City, JCPD, and Supervisors for Exemplary Damages.[3]

**Count XVIII:**  Malicious Abuse of Process, False Arrest and False Imprisonment against Gonzalez and All Defendant Officers for Compensatory and Exemplary Damages.

**Count XIX:**  Loss of Services against All Defendants for Compensatory Damages.[4]

Comey is sued only in his representative capacity as Chief of JCPD.  (Collected Defs.' 56.1 ¶ 1.)  Neither Alamo, nor Figueroa, nor Walsh arrested, touched, or spoke to Gattas during the incident in question.  (Id. ¶¶ 3-5.)

On April 29, 2009, the Collected Defendants filed a Motion for Summary Judgment.[5] (Docket No. 17.)  On May 15, 2009, Gonzalez filed a Motion for Summary Judgment.  (Docket No. 18.)  The Motions, Docket Nos. 17 and 18, are the subject of this Opinion.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction over Plaintiffs' federal constitutional claims, pursuant to 28 U.S.C. § 1343(a)(3), and supplemental jurisdiction over Plaintiffs' state law-based claims, pursuant to 28 U.S.C. § 1367.  This Court has personal jurisdiction over this matter, because all defendants reside in New Jersey.  Venue in this Court is proper, pursuant to 28 U.S.C. § 1391(b).

## LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  Celotex Corp. v.

---

[3]Count XV claims respondeat superior negligence, whereas Counts XVI and XVII claim negligent failure to provide adequate training, supervision, and control of Gonzalez and the other defendant officers.

[4]This Count is mistakenly numbered XVIII in the Complaint.

[5]Plaintiff did not file an opposition brief to the Collected Defendants' Motion.

Catrett, 477 U.S. 317, 322-23 (1986); Carrasca v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  This Court shall "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."  Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (citation omitted).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence . . . ."  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

When the moving party has the burden of proof on an issue at trial, that party has "the burden of supporting their motions 'with credible evidence . . .  that would entitle [them] to a directed verdict if not controverted at trial.'"  In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 477 U.S. at 331); see also United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991) ("When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact:  it . . . must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." (emphasis in original)  (internal citations omitted).)  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e)(2) (requiring nonmoving party to "set out specific facts showing a genuine issue for trial").  "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."  Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

Summary judgment must be granted, where,

after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such situation, there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

Celotex, 477 U.S. at 322-23.

## ANALYSIS

For purposes of clarity, this Court will divide its analysis of the two Motions in the following manner.

First, this Court will analyze Gonzalez's Motion as to Plaintiffs' federal constitutional claims against Gonzalez, Counts I-IV and VI.  For the reasons stated below, Gonzalez's Motion is

8

denied as to Plaintiffs' claims for wrongful arrest and excessive force, Counts I-IV, and granted as to Plaintiffs' claim for conspiracy to violate civil rights, Count VI.

Second, this Court will analyze the Collected Defendants' Motion as to Plaintiffs' federal constitutional claims against the Collected Defendants, Counts I-V.[6]  For the reasons stated below, the Collected Defendants' Motion is granted as to all of these claims.

Third, this Court will analyze both Gonzalez's and the Collected Defendants' Motions regarding Plaintiffs' state law-based tort claims against all Defendants, Counts VII-XIX.  For the reasons stated below, both summary judgment motions are denied.

## I.    Federal Constitutional Claims Against Gonzalez

Counts I-VI of Plaintiffs' Complaint allege that Gonzalez violated Gattas' constitutional rights, pursuant to 42 U.S.C. §§ 1983 and 1985.  The gravamen of these Counts assert claims against Gonzalez for wrongful arrest (Compl. ¶¶ 32-39), the use of excessive force (Id. ¶¶ 32-39), and conspiracy, with the other defendant officers, to violate Gattas' civil rights. (Id. ¶¶ 45-46.)

Section 1983 of Title 42 subjects to liability:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. 42 U.S.C. § 1983.

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (citing Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).  "The first step in any [§ 1983] claim is

---

[6]Count VI also asserts federal constitutional claims against the Collected Defendants for conspiracy to violate Gattas' civil rights.  This claim will be addressed in the section analyzing Plaintiffs' claims against Gonzalez.

to identify the specific constitutional right allegedly infringed." Albright, 510 U.S. at 271 (citing

Graham v. Connor, 490 U.S. 386, 394 (1989), and Baker, 443 U.S. at 140). To establish a viable §

1983 claim, a plaintiff must demonstrate that "the conduct complained of was committed by a

person acting under color of state law" and that the "conduct deprived the plaintiff of his rights,

privileges and immunities secured by the Constitution or laws of the United States." Kost v.

Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993) (quoting Parratt v. Taylor, 451 U.S. 527, 535 (1981)

overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)).

42 U.S.C. § 1985(3) provides, in relevant part:

> If two or more persons in any State or Territory conspire or go in disguise on the highway
> or on the premises of another, for the purpose of depriving, either directly or indirectly,
> any person or class of persons of the equal protection of the laws, or of equal privileges
> and immunities under the laws; or for the purpose of preventing or hindering the
> constituted authorities of any State or Territory from giving or securing to all persons
> within such State or Territory the equal protection of the laws; or if two or more persons
> conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to
> vote, from giving his support or advocacy in a legal manner, toward or in favor of the
> election of any lawfully qualified person as an elector for President or Vice President, or as
> a Member of Congress of the United States; or to injure any citizen in person or property
> on account of such support or advocacy; in any case of conspiracy set forth in this section,
> if one or more persons engaged therein do, or cause to be done, any act in furtherance of
> the object of such conspiracy, whereby another is injured in his person or property, or
> deprived of having and exercising any right or privilege of a citizen of the United States,
> the party so injured or deprived may have an action for the recovery of damages
> occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

To establish a cause of action under section 1985:

> [A] plaintiff must allege:  (1) a conspiracy; (2) motivated by racial or class based
> discriminatory animus designed to deprive, directly or indirectly, any person or class of
> persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and
> (4) an injury to person or property or the deprivation of any right or privilege of a citizen
> of the United States.

Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997).

In a suit against a police officer for violations of constitutional rights, the requisites of qualified immunity must be considered.  Saucier v. Katz, 533 U.S. 194, 200 (2001).  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The qualified immunity standard 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'"  Giles v. Davis, 427 F.3d 197, 203 (3d Cir. 2005) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

To determine whether qualified immunity acts as a defense here, this Court must determine whether (1) the officer's conduct violated a constitutional right, and, if so, (2) whether the constitutional right was clearly established.  Saucier, 533 U.S. at 201.  A court is permitted to exercise its discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand.  Pearson, 129 S. Ct. at 818.  This inquiry turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken."  Id. at 822 (internal quotation and citation omitted).

### A.    Wrongful Arrest

Gattas alleges that he was wrongfully arrested by Gonzalez.  Gonzalez's motion for summary judgment on this claim is denied.

"An arrest may violate the standards of the Fourth Amendment . . . if made without probable cause to believe that a crime has been committed."  Barna v. City of Perth Amboy, 42

F.3d 809, 819 (3d Cir. 1994) (citing Gerstein v. Pugh, 420 U.S. 103, 111 (1975); Patzig v. O'Neil,

577 F.2d 841 (3d Cir. 1978)).  The existence of probable cause to arrest constitutes a complete

defense to an action for false arrest.  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).

Probable cause exists when the "facts and circumstances within the officer's knowledge . .

. are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the

circumstances shown, that the suspect has committed, is committing, or is about to commit an

offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979); accord Maryland v. Pringle, 540 U.S.

366, 370-71 (2003).  Probable cause is a wholly objective, "reasonable officer" standard, and the

officer's subjective motivation is irrelevant.  Whren v. United States, 517 U.S. 806, 813 (1996).

A warrantless arrest in a public place comports with the Fourth Amendment so long as there was

probable cause to arrest for *some* crime; the probable cause need not be for the crime articulated

by the arresting officer, or even for a "closely related" crime.  Devenpeck v. Alford, 543 U.S. 146,

153-54, 153 n.2 (2004).

Courts of appeals decisions consistently state that probable cause normally presents a

question of fact for the jury, "unless there is only one reasonable determination possible."

Logsdon v. Hains, 492 F.3d 334, 341 (6th Cir. 2007); Radvansky v. City of Olmsted Falls, 395

F.3d 291, 302 (6th Cir. 2005); see Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998)

(summary judgment on a malicious prosecution claim is only appropriate if, taking all of the

plaintiff's allegations as true and resolving all inferences in her favor, a reasonable jury could not

find a lack of probable cause for the stop and arrest).  Therefore, "a district court may conclude

that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff,

reasonably would not support a contrary factual finding, and may enter summary judgment

accordingly."  Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003) (internal quotation and citation omitted).

The question to be decided here is whether a reasonable jury, on the evidence adduced and drawing all inferences in Plaintiffs' favor, could have reasonably found that Gonzalez did not have probable cause to arrest Gattas.  Patzig, 577 F.2d at 847.  This Court finds that the evidence pointing to a lack of probable cause is sufficient to allow the issue to go to a jury.

According to the recording made by Gattas at the time of his arrest, Gonzalez responded to Gattas' persistent questions about why he had to move his car — which continued after he moved the car, pursuant to Gonzalez's command —  by stating, "You know what?  You want me to take this to the next level?  Let me have your paperwork.  Let me have your paperwork for the car." (Pls.' Ex. 7 (quoted in Opp. 4).)  When Gattas replied that he would provide the paperwork if he could speak to Gonzalez's sergeant, Gonzalez replied, "I'm gonna ask you one more time and then I'm gonna lock you up for obstruction.  You want me to lock you up for obstruction?"  (Id. (quoted in Opp. 5).)  Gonzalez asked Gattas for his paperwork once more, then placed him in handcuffs.  (Id.)

Gonzalez testified at his deposition that he arrested Gattas because of Gattas' refusal to give his documents to Gonzalez.  (Gonzalez Dep. 85:2-4.)  In addition, Gonzalez admitted that Gattas was not required, by law, to give those documents to Gonzalez.  (Id. 10-11.)  Rather, Gonzalez stated his belief that "if an officer gives you orders to do something to diffuse a situation, diffuse it.  End of story.  Just comply."  (Id. at 11-13.)

Gonzalez further testified that, once Gattas was in the holding cell at the police station, Gonzalez "stated to [Gattas], 'You didn't get hurt.  I didn't get hurt.  We can work on this.'"  (Id.

13

96:12-13.)  Gonzalez continued, "Whatever I charged you with, I'll work with — I'll work it out with you in court."  (Id. 96:14-16.)  Gonzalez testified that he filed a "bull**** charge [against Gattas]. . . with the hope that it would get dismissed in court."  (Id. at 123:12-13, 22.)  The prosecutor assigned to the case repeatedly told Gonzalez that, "You have no probable cause," to which Gonzalez stated, "Well, [the prosecutor] was right."  (Id. 125:3-5.)

Construing the evidence — specifically, the excerpts above — in the light most favorable to Gattas, this Court concludes that the evidence is sufficient to support Gattas' claim of wrongful arrest.  Estate of Smith, 318 F.3d at 514.  In particular, a reasonable jury could find that the evidence would not have provided a reasonable officer with probable cause to arrest Gattas, because Gattas had not committed, was not in the process of committing, and was not about to commit an offense.  DeFillippo, 443 U.S. at 37.

A reasonable jury could also construe Gonzalez's statements regarding the fact that neither man was hurt, and that he would file a specific charge against Gattas in the hope that the charge would be dismissed, as admissions that neither Gonzalez nor any reasonable police officer would have found probable cause to arrest Gattas for obstruction.  Thus, Gonzalez is not entitled to qualified immunity on this claim.  See Saucier, 533 U.S. at 201 (qualified immunity does not apply where the officer's conduct violated a constitutional right, and the constitutional right was clearly established).

For the reasons above, Gonzalez's motion for summary judgment on Plaintiffs' wrongful arrest claim is denied.

**B.      Excessive Force**

Plaintiffs also filed a section 1983 claim against Gonzalez for the use of excessive force. Gonzalez's motion to dismiss this claim is denied.

"All claims that law officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395 (1989). The analysis of reasonableness under the Fourth Amendment requires "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." Id. at 396 (internal quotations omitted). The "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat to effect it." Id.

The test of reasonableness is "not capable of precise definition or mechanical applications," id. (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979)), but "requires careful attention to the facts and circumstances of each particular case including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. The test is objective. Id. at 397.

This Court finds the Third Circuit case, Kopec v. Tate, 361 F.3d 772 (3d Cir. 2004), dispositive as to Gonzalez's summary judgment motion on Plaintiffs' excessive force claim. In Kopec, the Third Circuit reversed summary judgment in favor of a police officer on an excessive force claim in factual circumstances that are similar to those here. Id. at 773-74. The plaintiff in that case was stopped for trespassing onto a frozen lake at an apartment complex. Id. at 774. The

15

police officer did not intend to arrest the plaintiff.  Id.  However, when the plaintiff refused to provide his name, address or phone number to the police officer, the officer became annoyed and arrested the plaintiff for disorderly conduct, handcuffing the plaintiff behind his back.  Id.

Within about ten seconds of being handcuffed, the plaintiff began to lose feeling in his right hand and asked the officer to loosen the handcuffs.  Id.  The plaintiff told the officer the pain was unbearable and begged him to loosen the handcuffs.  Id.  Plaintiff then fell to the ground and groaned in excruciating pain.  Id.  The officer finally loosened the handcuffs after about ten minutes, and the plaintiff claimed to have permanent nerve damage in his wrist as a result of the handcuffing.  Id.

The court held that, "the facts [the plaintiff] asserts, taken in the light most favorable to him, show that [the officer] violated [the plaintiff's] Fourth Amendment rights."  Id. at 776.  The court noted that the officer faced "rather benign circumstances that hardly justified his failure to respond more promptly" to the plaintiff's entreaties.  Id.  at 777.  The officer "was not, after all, in the midst of a dangerous situation involving a serious crime or armed criminals."  Id.  Regarding qualified immunity, "it cannot be said as a matter of law that a reasonable officer would not have known that this conduct was in violation of the Fourth Amendment."  Id.

Here, Gattas' allegations are similar to those made by the plaintiff in Kopec.  Gattas alleges that he told Gonzalez that he was breaking Gattas' arm and pulling too hard on the handcuffs.  (Compl. ¶ 21.)  Gattas also alleges that he pled that the handcuffs were too tight and caused his hands to feel numb.  (Id. ¶ 22.)  Gonzalez testified that Gattas complained about his shoulder.  (Gonzalez Dep. 119:3), and that Gonzalez did not loosen the handcuffs at any time before arriving at the precinct.  (Id. 120:25-121:6.)

16

In addition, like the officer in <u>Kopec</u>, Gonzalez "faced rather benign circumstances that hardly justified his failure to respond more promptly to [the plaintiff's] entreaties." <u>Kopec</u>, 361 F.3d at 777.  As was true in <u>Kopec</u>, Gattas was unarmed, and Gonzalez was not "in the midst of a dangerous situation involving a serious crime or armed criminals." <u>Id</u>.

Further, in the wake of this incident, Gattas sought treatment for injuries to his wrists, among other injuries.  (<u>See</u> Pls.' Ex. 1 (describing Gattas' course of treatment for his injuries).) While some of Gattas' injuries may have resulted from prior accidents, there is evidence that Gattas' wrist injuries were solely traceable to being handcuffed.  (<u>See</u> <u>id</u>.; <u>see also</u> Pls.' Ex. 4 (narrative report of Dr. Richard Boiardo, M.D., Gattas' treating physician).)  Gattas had surgeries on his right wrist in 2006 and 2007, and surgery on his left wrist in 2006.  (Pls.' Ex. 1:4, 6, 9.)  In addition, Gattas underwent treatment and three surgeries on his right shoulder.  (<u>Id</u>. Ex. 1:5, 7, 8.) All of these surgeries occurred after Gattas' arrest by Gonzalez.

The facts Gattas asserts, taken in the light most favorable to him, show that Gonzalez violated Gattas' Fourth Amendment right to be free of excessive force.  <u>Kopec</u>, 361 F.3d at 776. Regarding qualified immunity, "it cannot be said as a matter of law that a reasonable officer would not have known that this conduct was in violation of the Fourth Amendment." <u>Id</u>. at 777.

For these reasons, Gonzalez's summary judgment motion as to Gattas' excessive force claim is denied.

17

### C.    Conspiracy to Violate Civil Rights

Count VI of Plaintiffs' complaint alleges that Gonzalez, along with Walsh, Alamo, Figueroa, and John and Jane Does 1-10, conspired to violate Gattas' civil rights.  The motions by Gonzalez and the Collected Defendants to dismiss this Count are granted.[7]

There exists no issue of disputed material fact that would enable a reasonable jury to find for Plaintiffs on this claim.  Plaintiffs do not allege that Gonzalez and the Collected Defendants were motivated by racial or class based discriminatory animus to deprive Gattas of equal protection of the laws.  To the extent that Plaintiffs allege a conspiracy, they do so in name only, and fail to provide any evidence of such a conspiracy to deprive Gattas of equal protection of the laws.  "Rule 56(c) mandates the entry of judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . ."  Celotex, 477 U.S. at 322.

For that reason, the motions for summary judgment brought by Gonzalez and the Collected Defendants are granted as to Plaintiffs' claim of conspiracy to violate civil rights.

## II.   Federal Constitutional Claims Against Jersey City, JCPD, Comey, Alamo, Figueroa, And Walsh

Each of Plaintiffs' constitutional claims against Gonzalez, Counts I-IV and VI, also names other defendants.  In addition, Count V of the Complaint asserts a claim solely against defendants Jersey City, JCPD, Comey, and Mike and Mary Moes 1-10.  For the reasons explained below, the

---

[7]The Collected Defendants' Motion for summary judgment is granted for the same reasons as addressed in this section.

Collected Defendants' motion to dismiss each of Plaintiffs' federal constitutional claims in these Counts is granted.

As a preliminary matter, all federal constitutional claims against JCPD are dismissed. "[T]he municipality and its police department [are treated] as a single entity" for purposes of federal constitutional claims." Boneberger v. Plymouth Township, 132 F.3d 20, 25 n.4 (3d Cir. 1997); see also McGovern v. City of Jersey City, No. 98-5186, 2006 WL 42236, at *7 n.4 (D.N.J. Jan. 6, 2006) (dismissing claims against a police department).

### A.      Wrongful Arrest and Excessive Force

Counts I-IV of the Complaint state claims against Defendants Walsh, Alamo, Figueroa and/or John and Jane Does 1-10 for the intentional failure to make efforts to prevent, or otherwise mitigate or intervene to stop, the allegedly wrongful arrest, and use of excessive force against, Gattas.  (Compl. ¶¶ 32-39.)  The Collected Defendants' motion to dismiss these claims is granted, because each of these defendants is entitled to qualified immunity.

The qualified immunity inquiry turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." Pearson, 129 S. Ct. at 822.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.  "Probable cause to arrest exists when the *information within the arresting officer's knowledge* at the time of the arrest is sufficient to warrant a reasonable law enforcement officer to believe that an offense has been or is being committed by the person to be arrested." Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 2000) (emphasis added).

Gattas does not allege that Walsh, Alamo, or Figueroa participated in Gattas' arrest.  It is not disputed that Walsh, Alamo, and Figueroa did not touch nor speak to Gattas.[8]  (Other Defs.' Collected Defs.' 56.1 ¶¶ 3-5.)  Gattas does not allege that Walsh, Alamo, or Figueroa arrived or departed in the same police car as Gonzalez.  Plaintiff has not argued that it would be clear to a reasonable officer in the shoes of Walsh, Alamo, or Figueroa that Gonzalez was executing a potentially false arrest of Gattas.  Thus, Walsh, Alamo, and Figueroa are entitled to qualified immunity on Plaintiffs' claim of false arrest.

Similarly, Plaintiffs do not allege that Walsh, Alamo, or Figueroa participated in any use of force against Gattas.  Gattas testified that after he was handcuffed, he yelled out the window of Gonzalez's police car, to Walsh, Alamo, and Figueroa, that the handcuffs were too tight and that Gattas' hands were going numb.  (Gattas Decl. 48:18-20.)  Gattas did not request medical attention.  (Id. 49:12-14.)  It would not be clear to a reasonable officer in the shoes of Walsh, Alamo, or Figueroa that his failure to respond to Gattas' entreaties was unlawful.  Saucier, 533 U.S. at 202.  Walsh, Alamo, and Figueroa are thus also entitled to qualified immunity on Plaintiffs' claim of excessive force.

### B.      Policy and Practice Allowing the Use of Excessive Force

Count V of the Complaint is Plaintiffs' sole remaining federal claim against the Collected Defendants.  That Count asserts a claim against Jersey City[9] for instituting a policy or practice of allowing JCPD officers "to use force excessively and cover up the excessive use of force, despite the lack of probable cause to arrest or any actual violation which would justify the issuance of a

---

[8]Officers John/Jane Doe 1-10 have not been identified.  (Collected Defs.' 56.1, Procedural History ¶ 1.)

[9]Plaintiffs also assert this claim against JCPD.  (Compl. ¶¶ 41-42.)  All federal constitutional claims against JCPD, however, have been dismissed from the Complaint.  Section II, supra.

citation."[10]  (Compl. ¶ 42.)  Plaintiffs also allege that Comey and Mike/Mary Moes 1-10, in their

supervisory capacity, encouraged and tolerated these policies and practices, and failed to

adequately train, direct, supervise, or control defendant officers in order to prevent the violation of

Gattas' constitutional rights.  (Id. ¶ 43.)  These claims, against Jersey City, Comey, and

Mike/Mary Moes 1-10 are dismissed.

       "A municipality can be sued directly under section 1983 where action pursuant to a

municipal policy or custom causes a constitutional tort."  Fagan v. City of Vineland, 22 F.3d

1283, 1291 (3d Cir. 1994).  A municipal policy is a statement, ordinance, regulation, or official

decision adopted and promulgated by that body's officers.  Monell v. Dept. of Social Services of

City of New York, 436 U.S. 658, 690 (1978).  A municipal custom is that, which "[a]lthough not

authorized by written law," is "so permanent and well settled as to constitute a 'custom or usage'

with the force of law."  Id. at 691.

       Here, Plaintiffs fail to allege either a municipal policy or custom that would satisfy the

Monell requirements.  They allege no statement, ordinance, regulation, or official decision

adopted and promulgated by Jersey City regarding the authorization of certain officers to use force

excessively and cover up the excessive use of force.  Nor do Plaintiffs allege that Jersey City has

adopted a  municipal custom to that end.  Plaintiffs allege only a single instance of wrongful arrest

and excessive force, arising from Gonzalez's arrest of Gattas.  A single instance does not a custom

or policy make.

---

[10]Count VI, asserting a claim of conspiracy to violate civil rights, is addressed in Section I.A,
supra.

Plaintiffs' claim against Comey also fails.[11]  In order to make out a claim for section 1983 liability based no inadequate training, the plaintiff must demonstrate *specific* training deficiencies and either (1) a pattern of constitutional violations of which policy-making officials can be charged with knowledge, or (2) that training is obviously necessary to avoid constitutional violations.  City of Canton v. Harris, 489 U.S. 378, 390 (1989).  Plaintiffs allege, and do not support with evidence, only general, not specific, deficiencies in training.

In order to impose supervisory liability on Comey for his failure to adequately direct, supervise, or control the defendant officers, Plaintiffs must show that Comey either personally directed, or had knowledge of and acquiesced in unlawful conduct.  Rode v. Dellarciprete, 845 F.2d 1195, 1207.  Liability cannot be based on the operation of *respondeat superior*.  Monell, 436 U.S. at 694 n.58.  "[S]imple awareness of employees' misconduct does not lead to supervisory liability."  Id.

Plaintiffs do not allege that Comey either personally directed, or had knowledge of and acquiesced in, Gonzalez's alleged violations.  Thus, supervisory liability cannot be imposed on Comey.  Rode, 845 F.2d at 1207.

For those reasons, the Collected Defendants' Motion as to Count V of the Complaint is granted.

---

[11]Officers Mike/Mary Moe 1-10 have not been identified.  (Collected Defs.' 56.1, Procedural History ¶ 1.)

### III.     State Tort Claims Against All Defendants

Counts VII-XIX of the Complaint state law-based claims against Defendants.  Both

Gonzalez's Motion and the Collected Defendants' Motion are denied as to these claims.

Plaintiffs' state law-based claims are governed by the New Jersey Tort Claims Act.[12]  See

N.J. Stat. Ann. § 59:8-3 ("No action shall be brought against a public entity or public employee

under this act unless the claim upon which it is based shall have been presented in accordance

with the procedure set forth in this chapter.").  Neither party has briefed the issue of whether

Plaintiffs complied with that statute's notice requirements, N.J. Stat. Ann. § 59:8-8a.[13]

This Court orders that the parties brief the issue of whether Plaintiffs' complied with the

New Jersey Tort Claims Act's notice requirements.

---

[12]Plaintiffs' federal constitutional claims are not governed by the New Jersey Tort Claims Act.
See Schneider v. Simonini, 749 A.2d 336, 355 (N.J. 2000) ("[T]he notice provision of the New
Jersey Tort Claims Act [] does not apply to Section 1983 cases.") (citing Felder v. Casey, 487
U.S. 131, 134-38 (1988)).

[13]Section 59:8-8a provides:

A claim relating to a cause of action for death or for injury or damage to person or to
property shall be presented as provided in this chapter not later than the ninetieth day
after accrual of the cause of action.  After the expiration of six months from the date
notice of claim is received, the claimant may file suit in an appropriate court of law.  The
claimant shall be forever barred from recovering against a public entity or public
employee if:
a.  He failed to file his claim with the public entity within 90 days of accrual of his claim
except as otherwise provided in section 59:8-9; or
b.  Two years have elapsed since the accrual of the claim; or
c.  The claimant or his authorized representative entered into a settlement agreement with
respect to the claim.
Nothing in this section shall prohibit an infant or incompetent person from commencing
an action under this act within the time limitations contained herein, after his coming to
or being of full age and sane mind.

**CONCLUSION**

For the reasons addressed above, Gonzalez's Motion for Summary Judgment is granted as to Count VI, denied as to Counts I-IV, and denied as to Counts VII-XIX; and the Collected Defendants' Motion for Summary Judgment is granted as to Counts I-VI, and denied as to Counts VII-XIX.  Regarding Counts VII-XIX, this Court requests supplemental briefing on the issue of whether Plaintiffs complied with the New Jersey Tort Claims Act notice requirement.


 S/Joseph A. Greenaway, Jr.
 JOSEPH A. GREENAWAY, JR., U.S.D.J.


December 29, 2009