<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF NEW JERSEY</u>

—————————————————————————— :
                                                          :
SAMY GATTAS and MAHA GATTAS,          :
                                                          :
        Plaintiffs,                               :
                                                          :           Civil Action No. 07-4242 (JAG)
           v.                                      :
                                                          :                 **OPINION**
CITY OF JERSEY CITY; JERSEY CITY        :
POLICE DEPARTMENT; CHIEF                   :
THOMAS J. COMEY, in his official             :
capacity; OFFICER MICHAEL                       :
GONZALEZ, individually and in official       :
capacity; OFFICER J. WALSH,                       :
individually and in official capacity;           :
OFFICER ALAMO, individually and in         :
official capacity; OFFICER FIGUEROA,        :
individually and in official capacity; JOHN  :
AND JANE DOES 1-10; MIKE AND               :
MARY MOES 1-10,                                        :
                                                          :
        Defendants.                              :
—————————————————————————— :

<u>GREENAWAY, JR., U.S.C.J.[1]</u>

      This matter comes before this Court on the motion for summary judgment by defendant

Michael Gonzalez ("Gonzalez Motion") (Docket No. 18), and the motion for summary judgment

by the City of Jersey City, the Jersey City Police Department, Chief Thomas J. Comey, and

Officers Alamo, Figueroa, and Walsh ("Collected Defendants' Motion"). (Docket No. 17.) This

Court's December 29, 2009, Opinion and Order addressed the Motions as to Counts I-VI of the

---

[1] Sitting by designation.

1

Complaint.  (Docket Nos. 25, 26.)  This Opinion addresses the remaining Counts alleged in the Complaint.

For the reasons set forth below, summary judgment is granted to Gonzalez as to Counts IX, X and XIX, and denied as to Counts VII, VIII, XIII, XIV, and XVIII; summary judgment is granted to Walsh, Alamo, and Figueroa as to Counts IX, X, XIII, XIV, XVIII, and XIX; and summary judgment is granted to the City of Jersey City ("Jersey City") and the Jersey City Police Department ("JCPD") as to XI, XII, XVI, XVII, and XIX, and granted in part as to Count XV.

## BACKGROUND

### I.    The Parties

Plaintiffs Samy and Maha Gattas are a married couple presently residing in Cedar Grove, New Jersey.  (Compl. ¶ 6.)  At the time of the incident at the heart of Plaintiffs' Complaint, Samy and Maha Gattas resided in Jersey City, New Jersey.  (Id.)

Jersey City is a unit of local government authorized under Title 40A of the New Jersey Statutes to conduct business on behalf of the municipality throughout the State of New Jersey. (Id. ¶ 7.)

JCPD is a department within the government entity of Jersey City, that is responsible for law enforcement within its geographical bounds.  (Id. ¶ 8.)  JCPD is also responsible for the training of its law enforcement appointees, and promulgating and enforcing polices, practices, and procedures to regulate the actions of the employees within the department.  (Id.)

Defendant Michael Gonzalez ("Gonzalez") is a police officer with JCPD.  (Brief in Support of Summary Judgment Motion in Favor of Police Officer Michael Gonzalez, Undisputed Statement of Material Facts ("Gonzalez 56.1") ¶ 10; see Brief in Opposition to Motion for

2

Summary Judgment Filed by Defendant Michael Gonzalez, Response to Defendant's Undisputed Statement of Material Facts ("Pls.' 56.1") ¶ 10 (admitting to Gonzalez's service with JCPD).)

Defendant Thomas J. Comey ("Comey") is Chief of JCPD. (Brief in Support of Summary Judgment Motion in Favor of City of Jersey City, Jersey City Police Department, Chief Thomas J. Comey, Police Officer Nelson Alamo, Police Officer William Figueroa and Police Officer John Walsh, Undisputed Statement of Material Facts ("Collected Defs.' 56.1") ¶ 1.)[2]

Defendant Officer Alamo is identified as Sergeant Nelson Alamo ("Alamo"). (Id. Procedural History, ¶ 1.) Defendant Officer Figueroa is identified as Police Officer William Figueroa ("Figueroa"). (Id.) Defendant J. Walsh is identified as Police Officer John Walsh ("Walsh"). (Id.) The parties' Rule 56.1 statements do not address the identity or position of Defendants Alamo, Figueroa, or Walsh any further. (See generally Gonzalez 56.1; Collected Defs. 56.1; Pls.' 56.1.) Nor do the parties' Rule 56.1 statements address the identity of John and Jane Does 1-10, or Mike and Mary Moes 1-10. (Id.)

The Complaint refers to defendants Walsh, Alamo, Figueroa, and John and Jane Does 1-10 as "all defendant officers." (Compl. 5, Count I.) For the purpose of consistency with the parties' pleadings, this Court will, in this Opinion, refer to that subset of defendants as "all defendant officers," or "the defendant officers."

---

[2] Plaintiffs did not file a responsive statement of material facts, addressing the Collected Defendant's statement of material facts not in dispute. "[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." Loc. Civ. R. 56.1. To the extent, however, that the Collected Defendants' statement of material facts overlaps with Gonzalez's statement of material facts, Plaintiff's responsive statement of material facts addressing Gonzalez's statement is deemed responsive to the overlapping statements in the Collected Defendants' statement of material facts.

3

II.     **Samy Gattas' Arrest**

Plaintiffs' Complaint stems from circumstances surrounding the arrest of Plaintiff Samy Gattas ("Gattas") on September 10, 2005.  (Compl. ¶ 12.)  Plaintiff's allegations appear below.

On September 10, 2005, Gattas called JCPD to complain about a neighbor, who had placed items for sale on the sidewalk.  (Id.)  Gonzalez responded to the call, and ordered Gattas' neighbor to remove the items.  (Id.)  Gonzalez then threatened to end the dispute between Gattas and his neighbor by arresting both of them.  (Id. ¶ 13.)

Gonzalez ordered Gattas to move his motor vehicles, which were parked in his driveway.  (Id. ¶ 14.)  Gonzalez believed that the rear of Gattas' vehicle blocked the sidewalk.  ((Pls.' Ex. 7; Deposition of Michael Gonzalez ("Gonzalez Dep.") 37:21-23.) Gattas moved his motor vehicles, and then asked Gonzalez why he did not ask the owners of other motor vehicles parked in the same manner, to move their motor vehicles.  (Id. ¶ 15.)

At that point, Gonzalez demanded to see Gattas' motor vehicle documents.  (Id. ¶ 16.)  Gattas agreed to produce his documents, but asked Gonzalez why he (Gattas) should be compelled to do so.  (Id. ¶ 17.)  Gonzalez became "enraged" and "threatened to take this encounter 'to the next level.'" (Id. ¶ 18.)  Gonzalez handcuffed and arrested Gattas.  (Id.)  The verbal exchange between the two men was recorded, with Gonzalez's knowledge.  (Gonzalez Dep. 93:16-23.)

Gattas was handcuffed for between twelve to fifteen minutes.  (Gonzalez 56.1 ¶ 6; Pls.' 56.1. ¶ 6.)[3]  Gattas alleges that the handcuffs were too tight, and that Gonzalez ignored Gattas' pleas that Gonzalez was breaking Gattas' arm and pulling too hard on the handcuffs.  (Compl. ¶¶

---

[3]  Gattas alleges that he was handcuffed for an additional period of time while at the police station, and while being transported from the station to "Jersey City BCI" for processing.  (Pls.' 56.1 ¶ 6.)

20-21.)  Gattas further alleges that the other officers at the scene ignored or laughed at his pleas to

loosen the handcuffs.  (Id. ¶ 22.)  Gonzalez did not request medical attention when he was

arrested, or later at the police station.  (Gonzalez 56.1 ¶ 5; Pls.' 56.1 ¶ 5.)

As a result of injuries allegedly suffered in the course of the arrest, Gattas embarked on a

lengthy history of medical treatment.  (See Opp., Pls.' Ex. 1:2-9 (listing medical providers, dates

of treatment, and a summary of findings of medical treatment received from September 2005

through February 2008).)  Among other courses of treatment, Gattas underwent arthroscopic

surgeries on both wrists, two arthroscopic surgeries on his right shoulder, and right elbow surgery.

(Id. Ex. 1:4-9.)

## III.  The Complaint

On September 5, 2007, Plaintiffs filed a nineteen-Count Complaint against Defendants.

(Docket No. 1.)  Plaintiffs' claims include:

> **Count I:**  Violation of Constitutional Rights against Gonzalez, Walsh, Alamo, Figueroa,
> and/or John/Jane Does 1-10 (collectively, "Gonzalez and All Defendant Officers") for
> Compensatory Damages.
> **Count II:**  Violation of Constitutional Rights against Gonzalez and All Defendant
> Officers for Exemplary Damages.
> **Count III:**  Violation of Statutory Rights against Gonzalez and All Defendant Officers for
> Compensatory Damages.
> **Count IV:**  Violation of Statutory Rights against Gonzalez and All Defendant Officers for
> Exemplary Damages.
> **Count V:**  Violation of Constitutional Rights against City of Jersey City, JCPD, and
> Supervisors for Compensatory Damages.[4]
> **Count VI:**  Conspiracy to Violate Civil Rights against Gonzalez and All Defendant
> Officers for Compensatory Damages.
> **Count VII:**  Assault and Battery against Gonzalez for Compensatory Damages.
> **Count VIII:**  Assault and Battery against Gonzalez for Exemplary Damages.
> **Count IX:**  Intentional Infliction of Emotional Distress against Gonzalez and All
> Defendant Officers for Compensatory Damages.

---

[4] "Supervisors" reference Mike and Mary Moes 1-5.  (Compl. ¶ 9.)  Those individuals remain, to
this point, unidentified.  (Collected Defs.' 56.1 ¶ 1.)

**Count X:**  Intentional Infliction of Emotional Distress against Gonzalez and All Defendant Officers for Exemplary Damages.

**Count XI:**  Respondeat Superior Liability against Jersey City, JCPD, and Supervisors for Compensatory Damages.

**Count XII:**  Respondeat Superior Liability against Jersey City, JCPD, and Supervisors for Exemplary Damages.

**Count XIII:**  Negligence against Gonzalez and All Defendant Officers for Compensatory Damages.

**Count XIV:**  Negligence against Gonzalez and All Defendant Officers for Exemplary Damages.

**Count XV:**  Negligence against Jersey City, JCPD, and Supervisors for Compensatory Damages.

**Count XVI:**  Negligence against Jersey City, JCPD, and Supervisors for Compensatory Damages.

**Count XVII:**  Negligence against Jersey City, JCPD, and Supervisors for Exemplary Damages.[5]

**Count XVIII:**  Malicious Abuse of Process, False Arrest and False Imprisonment against Gonzalez and All Defendant Officers for Compensatory and Exemplary Damages.

**Count XIX:**  Loss of Services against All Defendants for Compensatory Damages.[6]

Comey is sued only in his representative capacity as Chief of JCPD.  (Collected Defs.' 56.1 ¶ 1.)  Neither Alamo, nor Figueroa, nor Walsh arrested, touched, or spoke to Gattas during the incident in question.  (Id. ¶¶ 3-5.)

On April 29, 2009, the Collected Defendants filed a Motion for Summary Judgment.[7] (Docket No. 17.)  On May 15, 2009, Gonzalez filed a Motion for Summary Judgment.  (Docket No. 18.)  On December 29, 2009, this Court granted the Gonzalez Motion as to Count VI of the Complaint, denied the Gonzalez Motion as to Counts I-IV of the Complaint, and granted the Collected Defendants' Motion as to Counts I-VI of the Complaint.  (Docket No. 26.)

---

[5]  Count XV claims respondeat superior negligence, whereas Counts XVI and XVII claim negligent failure to provide adequate training, supervision, and control of Gonzalez and the other defendant officers.

[6]  This Count is mistakenly numbered XVIII in the Complaint.

[7]  Plaintiff did not file an opposition brief to the Collected Defendants' Motion.

In addition, this Court denied both the Gonzalez Motion and the Collected Defendants'
Motion as to Counts VII-XIX (the "state law-based claims"), and ordered that the parties provide
to this Court supplemental briefing regarding whether Plaintiffs provided notice, pursuant to the
New Jersey Tort Claims Act, of their state-law based claims to Gonzalez and the Collected
Defendants.[8]  On January 13, 2010, Michael Dougherty ("Dougherty"), counsel to the Collected
Defendants, filed a letter with this Court, stating that "the file maintained by the 'Collected
Defendants' . . . contains a Notice of Claim which appears to be timely submitted on behalf of the
plaintiff."  (Docket No. 27.)

This Opinion will address, on the merits, the Gonzalez Motion and the Collected
Defendants' Motion as to Plaintiffs' state law-based claims.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction over Plaintiffs' federal constitutional claims,
pursuant to 28 U.S.C. § 1343(a)(3), and supplemental jurisdiction over Plaintiffs' state law-based
claims, pursuant to 28 U.S.C. § 1367.  Further, Plaintiff has met the jurisdictional requirement of
the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:8-8 (West 2010). This Court has personal
jurisdiction over this matter, because all defendants reside in New Jersey.  Venue in this Court is
proper, pursuant to 28 U.S.C. § 1391(b).

## LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the
moving party demonstrates that there is no genuine issue of material fact and the evidence
establishes the moving party's entitlement to judgment as a matter of law.  Celotex Corp. v.

---

[8]  The New Jersey Tort Claims Act notice provision is jurisdictional, and cannot be waived.
Madej v. Doe, 477 A.2d 439, 444 (N.J. Super. Ct. App. Law Div. 1984).

7

Catrett, 477 U.S. 317, 322-23 (1986); Carrasca v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002).

A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it

is material if, under the substantive law, it would affect the outcome of the suit.  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  This Court shall "view the facts in the light most

favorable to the nonmoving party and draw all inferences in that party's favor."  Andreoli v.

Gates, 482 F.3d 641, 647 (3d Cir. 2007) (citation omitted).  "In considering a motion for summary

judgment, a district court may not make credibility determinations or engage in any weighing of

the evidence . . . ."  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting

Anderson, 477 U.S. at 255).

When the moving party has the burden of proof on an issue at trial, that party has "the

burden of supporting their motions 'with credible evidence . . .  that would entitle [them] to a

directed verdict if not controverted at trial.'"  In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003)

(quoting Celotex, 477 U.S. at 331); see also United States v. Four Parcels of Real Property, 941

F.2d 1428, 1438 (11th Cir. 1991) ("When the *moving* party has the burden of proof at trial, that

party must show *affirmatively* the absence of a genuine issue of material fact:  it . . . must show

that, on all the essential elements of its case on which it bears the burden of proof at trial, no

reasonable jury could find for the non-moving party." (emphasis in original)  (internal citations

omitted.)  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . .

. the burden on the moving party may be discharged by 'showing' — that is, pointing out to the

district court — that there is an absence of evidence to support the nonmoving party's case."

Celotex, 477 U.S. at 325.

8

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e)(2) (requiring nonmoving party to "set out specific facts showing a genuine issue for trial").  "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."  Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

Summary judgment must be granted, where,

> after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such situation, there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex, 477 U.S. at 322-23.

## ANALYSIS

Pursuant to the New Jersey Tort Claims Act, a public employee is liable, except as otherwise in the Act, for injury caused by his act or omission to the same extent as a private person.  N.J. Stat. Ann. § 59:3-1(a) (West 2010).  "The liability of a public employee established by this act is subject to any immunity of a public employee provided by law and is subject to any

defenses that would be available to the public employee if he were a private person." Id. at §
59:3-1(b).  For instance, a public employee is not liable for any injury resulting from the exercise
of judgment or discretion vested in him.  Id. at § 59:3-2(a).  Nor is a public employee liable if he
acts in good faith in the execution or enforcement of any law.  Id. at 59:3-3.  However, the New
Jersey Tort Claims Act does not exonerate a public employee from liability for false arrest or false
imprisonment.  Id.

"A public entity is liable," pursuant to the New Jersey Tort Claims Act, "for injury
proximately caused by an act or omission of a public employee within the scope of his
employment in the same manner and to the same extent as a private individual under like
circumstances."  Id.. § 59:2-2a.  This section is the primary source of public entity liability, in that
"[i]t establishes the principle of vicarious liability for all public entities for 'injury proximately
caused by an act or omission of a public employee within the scope of his employment' and
thereby relies upon the established principles of law such as the doctrine of respondeat superior."
Wright v. State, 778 A.2d 443, 451 (N.J. 2001) (quoting Comment to N.J. Stat. Ann § 59:2-2).

"A public entity is not," however, "liable for the acts or omissions of a public employee
constituting a crime, actual fraud, actual malice, or willful misconduct."  N.J. Stat. Ann. § 59:2-10
(West 2010); see also Hoag v. Brown, 935 A.2d 1218, 1230 (N.J. Super. Ct. App. Div. 2007)
("[T]here can be no vicarious liability by a public entity for the intentional torts committed by its
employees; that is, with respect to such intentional torts, the theory of respondeat superior does
not apply.").

## I.     Assault And Battery

Counts VII and VIII of the Complaint allege assault and battery by Gonzalez against Gattas.  (See Compl. ¶¶ 47-49 (stating a claim for compensatory damages); id. at ¶¶ 50-51 (stating a claim for exemplary damages).)  Plaintiffs allege that, "The use of force by Officer Gonzalez when he had no lawful authority to arrest [Gattas], when [Gattas] was unarmed and did not pose a threat of death or grievous bodily injury to Gonzalez, the other defendant[] officers or others, was without justification or provocation, was excessive, and constitutes assault and battery for which defendant Gonzalez is liable."  (Id. at ¶ 47.)  Count VIII alleges that Gonzalez acted with malice.  (Id. at ¶ 51.)

Under New Jersey law, "[a] person is subject to liability for the common law tort of assault if:  (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension."  Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1117 (N.J. 2009) (internal quotation and citations omitted).  "The tort of battery rests upon a nonconsensual touching."  Id. (citation omitted).

The New Jersey Tort Claims exonerates public employees who act in good faith in the execution or enforcement of any law.  N.J. Stat. Ann. § 59:3-3 (West 2010).  A police officer may use such force as is reasonably necessary to effect an arrest.  Hill v. Algor, 85 F. Supp. 391, 411 (D.N.J. 2000) (citing State v. Williams, 148 A.2d 22, 29 (1959)).  "Where a police officer uses excessive force in effectuating an arrest," however, "that officer may be liable for assault and battery" under New Jersey law.  Id.

11

"To determine whether the force used [to effectuate an arrest] was excessive, it is necessary to examine 'the facts as they reasonably appeared to the officer at the time of the occurrence.'" Id. (quoting Williams, 148 A.2d at 29).  "The 'objective reasonableness' standard that is used to determine whether a defendant enjoys qualified immunity from actions brought pursuant to 42 U.S.C. § 1983 is used to determine questions of good faith arising under N.J.S.A. 59:3-3." Id. (citing Lear v. Township of Piscataway, 566 A.2d 557, 558-59 (N.J. Super. Ct. App. Div. 1989)).

As this Court determined in its prior Opinion, the facts asserted by Gattas, considered in the light most favorable to him, prevent this Court from granting the Gonzalez Motion regarding his (Gonzalez's) alleged use of excessive force against Gattas.  See Gattas v. City of New Jersey, No. 07-4242, 2009 WL 5216973, at *9 (D.N.J. Dec. 29, 2009) (citing Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004)).  For the same reasons explained in that Opinion, this Court cannot determine, as a matter of law, whether Gonzalez acted in good faith during the arrest of Gattas. Hill, 85 F. Supp. at 411.  "Regarding qualified immunity, 'it cannot be said as a matter of law that a reasonable officer would not have known that this conduct was in violation of the Fourth Amendment.'" Gattas, 2009 WL 5216973, at *9 (quoting Kopec, 361 F.3d at 776)).

The issue of whether Gonzalez acted in good faith creates a genuine issue as to a material fact.  The Gonzalez Motion is denied as to Counts VII and VIII.

## II.   Intentional Infliction of Emotional Distress

Counts IX and X state claims against Gonzalez and all defendant officers for intentional infliction of emotional distress.  (See Compl. ¶¶ 52-53 (claim for compensatory damages); id. at ¶¶ 54-55 (claim for exemplary damages).)  Specifically, Plaintiffs allege that:

12

> Defendant Gonzalez intentionally abused [Gattas], the other defendant officers intentionally failed to make efforts to prevent, mitigate or intervene against said abuse and further intentionally intimidated and humiliated [Gattas], all in a manner that was extreme, outrageous, and unjustified, and caused [Gattas] to suffer physical and emotional distress for which Gonzalez and the other defendant officers are liable.

(Id. at ¶ 53.)  Plaintiffs further state that the alleged actions "were unjustified and done with actual malice and wanton indifference to and deliberate disregard for human life and the rights of [Gattas]."  (Id. at ¶ 55.)

In order to establish a claim for intentional infliction of emotional distress, a plaintiff must establish:  (1) intentional and outrageous conduct by the defendant; (2) proximate cause; and (3) severe distress.  Buckley v. Trenton Saving Fund Soc., 544 A.2d 857, 863 (N.J. 1988).

> Initially, the plaintiff must prove that the defendant acted intentionally or recklessly.  For an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress. Second, the defendant's conduct must be extreme and outrageous . . . so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.  Third, the defendant's actions must have been the proximate cause of the plaintiff's emotional distress.  Fourth, the emotional distress suffered by the plaintiff must be so severe that no reasonable man could be expected to endure it.

Id. (internal quotations and citations omitted).  "The severity of the emotional distress raises questions of both law and fact.  Thus, the court decides whether as a matter of law such emotional distress can be found, and the jury decides whether it has in fact been proved."  Id. at 864 (citation omitted).  "[W]hen the intentional conduct is directed at the plaintiff, he or she need not prove any physical injury.  It suffices that the conduct produce emotional distress that is severe."  Id. (internal citation omitted).  Police officers are not immune from claims of intentional infliction of emotional distress.  See N.J. Stat. Ann. § 59:3-3 (West 2010) (public employees are only exempt from liability for the good faith execution or enforcement of any law).

13

Here, Gattas complains that he suffered "physical and emotional distress." (Compl. ¶ 53.) In his answers to Defendants' interrogatories,[9] Gattas states that, during the periods of convalescence following each surgery (allegedly arising from his confrontation with Gonzalez), "I could not assist my wife and father in household chores, I could not play with my children, I could not engage in normal relations with my wife." (Brief in Opp. to Mot. for Summary Judgment Filed by Def. Michael Gonzalez, Ex. P1 ("Pl.'s Answers to Interrogs."), ¶ 5A.) Gattas explained:

> I was of course distressed, anguished and humiliated at being arrested in public, in daylight, in front of my neighbors and passers-by . . . . It troubles me to this day that a Police Officer sworn to uphold the law hand-cuffed [sic] me, twisted my arms while pushing me into a patrol car, injured my hands, wrists, right elbow and shoulder leading to multiple surgeries and treatment, forced me to answer in court to groundless charges of obstruction, all because I asserted my rights as would any concerned and responsible citizen and property owner. It also troubles me that other officers who came to the scene or were at the police station did nothing to intervene. Rather, they ignored and laughed at my predicament. I have dealt with this trauma on my own and with the help of family. I have not sought professional counseling, as treatment for my physical injuries has been extensive and ongoing and more than enough for me to deal with. I should point out, however, that the constant back and forth to doctors is distressing in its own right.

(Id. at ¶ 27A.)

This Court finds that this evidence is insufficient, as a matter of law, to establish that Gattas suffered emotional distress so severe that no reasonable man could be expected to endure it. Buckley, 544 A.2d at 863. Gattas offers no evidence of his emotional distress, other than the mere statements that he is "distressed," "anguished," "humiliated," and "troubled" by the officer's actions, and that he has suffered "trauma" as a result of those actions. (Pl.'s Answers to Interrogs., ¶¶ 5A, 27A.) These unsupported allegations of emotional distress, without supporting medical evidence, are similar to those found insufficient, as a matter of law, by the New Jersey

---

[9]  It is unclear whether the interrogatories were propounded by Gonzalez, the Collected Defendants, or both.

Supreme Court in <u>Buckley</u>.  <u>See</u> <u>Buckley</u>, 544 A.2d at 864 (finding insufficient as a matter of law to support a finding of mental distress so severe that no reasonable man could be expected to endure it, allegations of sleep deprivation, aggravation, embarrassment, headaches, and nervous tension).

 Plaintiffs' intentional infliction of emotional distress claims cannot rest on mere allegations.  <u>Anderson</u>, 477 U.S. at 248.  Instead, Plaintiffs must present actual evidence that creates a genuine issue as to a material fact for trial.  <u>Id.</u>  Because Plaintiffs present no evidence that creates a genuine issue as to a material fact, the Motions are granted as to Counts IX and X of the Complaint.

## III. Respondeat Superior Liability

 Counts XI and XII of the Complaint assert claims of respondeat superior liability against Jersey City, JCPD, and Supervisors.  (<u>See</u> Compl. ¶¶ 56-58 (asserting a claim for compensatory damages); <u>id.</u> at ¶¶ 59-60 (asserting a claim for exemplary damages.)

 Count XI asserts respondeat superior liability "for the intentional tortious acts and omissions of the defendant police officers committed within the scope of their employment." (Compl. ¶ 58.)  New Jersey law does not provide for vicarious liability by a public entity for the intentional torts committed by its employees.  <u>See</u> N.J. Stat. Ann. § 59:2-10 (West 2010) (public entities are not vicariously liable for their employees criminal, fraudulent, malicious, or willful misconduct).  Summary judgment is granted to Jersey City and JCPD regarding Count XI.

 Count XII asserts respondeat superior liability on the grounds that, "Jersey City and the JCPD, through their agents, expressly authorized Gonzalez to use excessive force; knew, through its agents, that Gonzalez had a propensity for committing intentional torts and using excessive

force in the line of duty; and acquiesced in Gonzalez's wrongful conduct." (<u>Id.</u> at ¶ 60.)  Plaintiffs

put forth no evidence in support of these allegations.  "[U]nsupported allegations . . . and

pleadings are insufficient to repel summary judgment."  <u>Schoch</u>, 912 F.2d at 657.  Based on this

deficiency, the summary judgment is granted to Jersey City and JCPD regarding Count XII.

**IV.    Negligence**

In Counts XIII and XIV of the Complaint, Plaintiffs state claims of negligence against

Gonzalez and the Collected Defendants.  (<u>See</u> Compl. ¶¶ 61-63 (stating a claim for compensatory

damages); <u>id.</u> at ¶¶ 64-65 (stating a claim for exemplary damages).)  Plaintiffs allege that

Gonzalez, in his capacity as a police officer, owed Gattas the duty of refraining from excessive

force.  (<u>Id.</u> at ¶ 61.)  In addition, Plaintiffs allege that the Collected Defendants owed Gattas the

duty to prevent or mitigate the allegedly excessive use of force by Gonzalez against Gattas.  (<u>Id.</u>)

Counts XV, XVI, and XVII of the Complaint state claims of negligence against Jersey

City, JCPD, and Supervisors for compensatory and exemplary damages.  (<u>Id.</u> at ¶¶ 66-73.)

Specifically, Plaintiffs allege that Jersey City and JCPD are liable under the doctrine of respondeat

superior, as well as for their negligent failure to provide adequate training, supervision, and

control of Gonzalez and the Collected Defendants.  (<u>Id.</u> at ¶¶ 68, 70, 73.)

"A cause of action founded upon negligence involves a breach of duty of care that causes

injury."  <u>Weinberg v. Dinger</u>, 524 A.2d 366, 373 (N.J. 1987).  "The police's duty of care to an

arrestee requires the exercise of reasonable care to preserve the life, health, and safety of the

person in custody."  <u>Del Tufo v. Twp. of Old Bridge</u>, 685 A.2d 1267, 1272 (N.J. 1996).

A.       **Negligence Claims Against Gonzalez**

The Gonzalez Motion is denied as to Counts XIII and XIV.

This Court finds <u>Damiani v. West Deptford Twp.</u>, No. 07-2884, 2008 WL 656041 (D.N.J. Mar. 7, 2008), instructive.  In <u>Damiani</u>, the district court denied the defendant police officers' motion to dismiss the plaintiff's claim of negligence.  <u>Id.</u> at *4.  The plaintiff alleged that she was pulled over by two police officers, who allegedly removed her from her car without probable cause and exercised excessive and unnecessary force.  <u>Id.</u> at *1.  The plaintiff claimed that, as a result of this incident, she suffered physical and emotional injuries, including injury to her left wrist, emotional distress, pain and suffering, medical expenses, and present and potential inability to perform her usual duties.  <u>Id.</u> at *1 & n.1.

The court denied the motion to dismiss brought by the defendants—the police officers, the township, the township police department, and the chief of police.  <u>Id.</u> at *4.  The court held that the plaintiff sufficiently alleged the basic elements of negligence in her complaint by alluding to the officers' negligent actions and the damages she sustained as a result of those actions.  <u>Id.</u> at *4 & n.5.  "Drawing all reasonable inferences from the factual allegations in the light most favorable to Plaintiff, she has alleged facts that could show an absence of good faith, and thus the Court will deny Defendants' motion to dismiss Plaintiff's state law negligence claim."  <u>Id.</u> at *4.

Here, Plaintiffs have put forward evidence that, viewed in the light most favorable to them, precludes this Court from granting the Gonzalez Motion as to Counts XIII and XIV.  In his deposition, Gonzalez stated that, after he handcuffed Gattas, he (Gattas) "constantly complained" about pain in his shoulder.  (Brief in Opp. to Mot. for Summary Judgment Filed by Def. Michael Gonzalez, Ex. P2 ("Gonzalez Dep."), 119:16.)  Gonzalez also stated that he could have—but did

17

not—remove or loosen the handcuffs in an attempt to ameliorate Gattas' pain.  (Id. at 120:12-121:6.)  This evidence, construed in the light most favorable to Plaintiffs, creates a genuine issue of material fact regarding whether Gonzalez negligently used excessive force.

Further, Plaintiffs' facts can be construed to show an absence of good faith, by Gonzalez, in the carrying out of his official duties.  N. J. Stat. Ann. § 59:3-3.  Gonzalez testified in his deposition that he arrested Gattas for his refusal to hand over paperwork for his car, despite Gonzalez's admission that Gattas was not required, by law, to give that paperwork to Gonzalez. (Gonzalez Dep. 85:2-4, 85:11-13.)  A police officer who arrests someone for failing to perform an action that the officer knows the law does not compel, does not act in good faith.  State v. Crawley, 901 A.2d 924, 936 n.8 (N.J. 2006) ("[A] police officer who without any basis arbitrarily detains a person on the street would not be acting in good faith.")  For these reasons, the Gonzalez Motion is denied as to Counts XIII and XIV.

## B.    Negligence Claims Against Walsh, Alamo, Figueroa, And John/Jane Does 1-10

In those same Counts, Plaintiffs also state negligence claims against all defendant officers, who, Plaintiffs allege, "owed a duty to [Gattas] to prevent or mitigate the excessive use of force against him, and to refrain from actions that would reasonably be expected to humiliate plaintiff." (Compl. ¶ 62.)  The Collected Defendants' Motion to dismiss these claims is granted.

In its prior Opinion in this case, this Court pointed out that Gattas does not argue that it would have been clear to a reasonable officer in the shoes of the defendant officers that Gonzalez was executing a potentially false arrest of Gattas, or using excessive force in the course of that arrest.  Gattas, 2009 WL 5216973, at *11.  Just as the qualified immunity inquiry in that Opinion was an objective standard,  id. (citing Pearson v. Callahan, 129 S. Ct. 808, 822 (2009)), the good

18

faith inquiry under the New Jersey Tort Claims Act is also an objective standard.  Brayshaw v. Gelber, 556 A.2d 788, 793 (N.J. Super. Ct. App. Div. 1989) (citing Hayes v. Mercer County, 526 A.2d 737, 741 (N.J. Super. Ct. App. Div. 1987)).

Thus, this Court's conclusion, in its prior Opinion, that the defendant officers were entitled to qualified immunity as to Plaintiffs' claims of false arrest and the use of excessive force, Gattas, 2009 WL 5216973, at *11, is informative here.  Gattas does not establish facts that can be construed to demonstrate that any of the defendant officers failed to act in good faith in the performance of their duties as police officers.  "It would not be clear to a reasonable officer in the shoes of Walsh, Alamo, or Figueroa that his failure to respond to Gattas' entreaties was unlawful."  Id.  Therefore, this Court grants the summary judgment motion as to Counts XIII and XIV, with respect to Walsh, Alamo, and Figueroa.

### C.     Negligence Claims Against Jersey City, JCPD, And Supervisors

In Counts XV, XVI, and XVII, Plaintiffs state claims of negligence against Jersey City, JCPD, and Supervisors.  (See Compl. ¶¶ 66-71 (stating claims for compensatory damages); id. ¶¶ 72-73(stating a claim for exemplary damages).)  Specifically, Plaintiffs allege that Jersey City and JCPD are liable, pursuant to respondeat superior, for the negligence of other defendants committed within the scope of their employment (id. at ¶ 68); that Jersey City and JCPD failed to adequately train, supervise, and control Gonzalez and the other defendant officers (id. at ¶ 70); and that such failure to adequately train and supervise its police officers constitutes willful and wanton indifference to, and deliberate disregard for, the rights of private citizens, including Gattas.  (Id. at ¶ 73.)

19

Count XV states a claim against Jersey City, JCPD, and Supervisors for negligence, under the doctrine of respondeat superior, for the negligence committed by Gonzalez in the scope of his employment.[10]  (Compl. ¶ 68.)  To the extent that Plaintiffs' negligence claims against Gonzalez are based on his commission of a crime, actual fraud, actual malice, or willful conduct, Count XV, which states claims against Jersey City, JCPD, and Supervisors for respondeat superior liability, is unavailable as a matter of law.  N.J. Stat. Ann. § 59:2-10 (West 2010).  To the extent, however, that Plaintiffs' vicarious liability claims against Jersey City, JCPD, and Supervisors are based on mere negligence by Gonzalez, they face potential liability pursuant to the general concept of vicarious liability.  Comment to N.J. Stat. Ann. § 59:2-2 (West 2010).

"[A]n employer is vicariously liable for the torts of an employee only if the employee was acting within the scope of his or her employment at the time the tort was committed."  Carter v. Reynolds, 783 A.2d 724, 726 (N.J. Super. Ct. App. Div. 2001), aff'd, 815 A.2d 460 (2003). "Conduct is generally considered to be within the scope of employment if, 'it is of the kind [that the servant] is employed to perform; it occurs substantially within the authorized time and space limits; [and] it is actuated, at least in part, by a purpose to serve the master."  Di Cosala v. Kay, 450 A.2d 508, 513 (N.J. 1982) (quoting RESTATEMENT (SECOND) OF AGENCY § 228 (1957)).

Gonzalez's conduct was within the scope of employment.  Gonzalez was acting within his role as an on-duty police officer when he handcuffed Gattas.  (See Gonzalez Dep. 23:15-24 (Gonzalez stating that the "incident" arose out of and during the course of his employment).)  The arrest of Gattas was also, apparently, actuated by Gonzalez, at least in part, for the purpose of

---

[10]  Counts XV, XVI, and XVII also state claims for respondeat superior liability on the basis of the acts of all defendant officers.  Because summary judgment has been granted to the defendant officers as to those claims, see Part B, supra, this Court need not address respondeat superior liability regarding the action, or inaction, of the defendant officers.

fulfilling his role as a JCPD officer.  (See id. at 92:10-11 (Gonzalez indicated that he intended to arrest Gattas for obstructing a government function).)  It is apparent, therefore, that Gonzalez's actions during the incident with Gattas, took place within the scope of employment.  Di Cosala, 450 A.2d at 513.  Summary judgment is denied to Jersey City and JCPD on Count XV, to the extent that the claims stated therein are based on Gonzalez's negligence.

In Count XVI, Plaintiffs assert a claim against Jersey City, JCPD, and Supervisors for the negligent failure to provide adequate training, supervision, and control of Gonzalez and the other defendant officers.  (Compl. ¶ 70.)  In Count XVII, Plaintiffs allege that the negligent failure to provide adequate training and supervision constituted willful and wanton indifference to, and deliberate disregard for, human life and the rights of private citizens, including Gattas.  (Compl. ¶ 73.)

Plaintiffs do not provide any evidence that Jersey City or JCPD failed to adequately train, supervise, or otherwise control the police officers under their control.  Plaintiffs' claim cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248.  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  Schoch, 912 F.2d at 657.  Therefore, summary judgment is granted to Jersey City and JCPD as to Counts XVI and XVII.

**V.      Malicious Abuse Of Process, False Arrest, and False Imprisonment**

Count XVIII alleges that Gonzalez and all defendant officers used criminal process against Gattas in order to intimidate him, to dissuade him from asserting his rights against them, to cover up their own wrongdoing, and to avoid civil and criminal liability for their own acts or omissions.  (Compl. ¶ 75.)  In addition, the Count alleges that the above-listed defendants falsely arrested and

imprisoned Gattas, and that they acted with willful and wanton disregard of Gattas' rights. (Compl. ¶¶ 76-77.)

"An action for malicious abuse of process 'lies for the improper, unwarranted, and perverted use of process after it has been issued . . . [i.e.], the employment of a process in a manner not contemplated by law.'" Galbraith v. Lenape Regional High School Dist., 964 F. Supp. 889, 897 (D.N.J. 1997) (quoting Tedards v. Auty, 557 A.2d 1030, 1034 (N.J. Super. Ct. App. Div. 1989)). "The gist of the tort of malicious abuse of process is not commencing an action without justification, as in malicious use of process (or malicious prosecution). Rather, it is the misuse, or 'misapplying process justified in itself for an end other than which it was designed to accomplish. The purpose for which the process is used, *once it is issued*, is the only thing of importance.'" Baglini v. Lauletta, 768 A.2d 825, 831 (N.J. Super. Ct. App. Div. 2001) (quoting Prosser & Keeton on Torts 897, § 121 (5th ed. 1984)) (emphasis in original). "[B]asic to the tort of malicious abuse of process is the requirement that the defendant perform 'further acts' after issuance of process 'which represent the perversion or abuse of the legitimate purposes of that process.'" Id. at 831-32 (quoting Penwag Prop. Co. v. Landau, 372 A.2d 1162, 1165 (N.J. Super. Ct. App. Div. 1977)).

Plaintiffs provide sufficient evidence that Gonzalez maliciously abused process. Specifically, Gonzalez testified that he argued with the prosecutor to reinstate the complaint against Gattas, by stipulating to probable cause, because Gattas "makes a living out of suing people." (Gonzalez Dep. 123:5-25 (testimony that Gonzalez filed a charge against Gattas in the hope that it would be dismissed in court); id. at 124:17-22 (testimony that Gonzalez became aware that Gattas makes a living suing people); id. at 125:2-126:7 (testimony that Gonzalez

attempted to have the prosecutor charge Gattas, despite a lack of probable cause, because Gonzalez was told that Gattas likes to sue people).)

In Gonzalez's own words, he asked the prosecutor to stipulate probable cause because, "I realized that I got shafted."  (Id. at 124:17-22.)  Gonzalez's attempt, motivated by his belief that Gattas "shafted" Gonzalez, to encourage the prosecutor to stipulate probable cause, creates a genuine issue of material fact as to whether Gonzalez maliciously abused process.  The Gonzalez Motion regarding the malicious abuse of process claim in Count XVIII is denied.

Plaintiffs present no evidence that the other defendant officers maliciously abused process against Gattas.  Plaintiffs cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  Schoch, 912 F.2d at 657.  Therefore, the defendant officers' motion for summary judgment is granted as to Plaintiffs' malicious abuse of process claim in Count XVIII.

Plaintiffs also allege, in Count XVIII, the torts of false arrest and false imprisonment against Gonzalez and all defendant officers.  "New Jersey courts treat false arrest and false imprisonment as the same tort."  Ramirez v. U.S., 998 F. Supp. 425, 434 (D.N.J. 1998) (citing Price v. Phillips, 218 A.2d 167 (N.J. Super. Ct. App. Div. 1966)).  "The tort consists of two elements:  (1) an arrest or detention of the person against his will; (2) done without proper legal authority or legal justification."  Id. (citing Fleming v. United Parcel Svc., Inc., 604 A.2d 657 (N.J. Super. Ct. Law Div. 1992)).

In its prior Opinion in this case, this Court determined that Plaintiffs presented evidence sufficient to support their claim that Gattas was wrongfully arrested by Gonzalez. <u>Gattas</u>, 2009 WL 5216973, at *8.  For the same reasons that this Court provided in that Opinion, summary judgment is denied as to Plaintiffs' state-law claim against Gonzalez for false arrest and false imprisonment.  Specifically, it is clear that Gattas was arrested against his will, and a reasonable jury could find that the evidence would not have provided a reasonable officer with probable cause to arrest Gattas.  <u>Id.</u>

In that Opinion, this Court also held that Plaintiffs did not argue that it would be clear to a reasonable officer in the position of the defendant officers that Gonzalez was executing a potentially false arrest of Gattas.  <u>Id.</u> at * 11.  Nor did Plaintiffs present evidence that the defendant officers took part in Gattas' arrest.  <u>Id.</u>  For those reasons, summary judgment is granted to the defendant officers regarding Plaintiffs' state law claims for false arrest and false imprisonment, in Count XVIII.

**VI.    Loss Of Services**

In Count XIV, Plaintiffs state a claim for loss of services.  (Compl. ¶¶ 79-81.) Specifically, Maha Gattas, Gattas' wife, states that, as a direct and proximate result of the tortious acts of the defendants, she was deprived of the services, society, and consortium of her husband. (<u>Id.</u> at ¶ 81).

Plaintiffs do not provide any evidence of any loss, to Maha Gattas, of Gattas' services, society, or consortium.  Plaintiffs' claim cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  <u>Anderson</u>, 477 U.S. at 248.  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."

24

Schoch, 912 F.2d at 657.  Therefore, summary judgment is granted to all defendants as to Count XIX.

## CONCLUSION

For the reasons addressed above, summary judgment is granted to Gonzalez as to Counts IX, X and XIX, and denied as to Counts VII, VIII, XIII, XIV, and XVIII; summary judgment is granted to Walsh, Alamo, and Figueroa as to Counts IX, X, XIII, XIV, XVIII, and XIX; and summary judgment is granted to Jersey City and JCPD as to XI, XII, XVI, XVII, and XIX, and granted in part as to Count XV.

 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.C.J.
(Sitting by designation on the District Court)

March 5, 2010